## JOE ELDER v. THE STATE.

No. 18390. Delivered June 26, 1936.
Rehearing Denied October 21, 1936.

The opinion states the case.

H. F. *Lewis,* of Lampasas, and *Homer C. De Wolfe* and *E. C. Gaines,* both of Austin, for appellant.

*Henry Taylor,* District Attorney, of Temple, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for assault with intent to murder Lena Elder, punishment being assessed at six years in the penitentiary.

The injured party was appellant's wife. They had not been living together for some time. On the occasion of the assault appellant came to the house where his wife and children were living and apparently without any cause commenced to beat his wife with his fist and with a piece of iron referred to as an "angle iron" from a windmill. At the time of the assault and prior thereto he threatened to kill his wife. During the time he was striking her the children interfered to the extent of lessening the force of the blows directed at their mother by appellant. We deem the evidence sufficient to support the verdict.

Appellant had no attorney representing him during the trial, but secured the services of one who filed a motion for

new trial in which it was averred that he was confined in jail, but that his father and a friend had been requested to secure Mr. Lewis to represent appellant; that on the morning of the day the case was called for trial they sought Mr. Lewis but found he was in another county engaged in the trial of a case there; it was further averred in said motion that he was not able to secure other counsel. The State controverted the motion by a sworn answer of the District Attorney setting up the following facts. Appellant was indicted in September, 1935, and when the case was called for trial at that term of court appellant was not present, but his bond was forfeited. Appellant was re-arrested and placed in jail at Lampasas. The December term of court convened on the 2nd day of December, and on the fourth appellant was notified that the case would be called for trial on the ninth. When the case was called for trial appellant stated to the court that he was being represented by Mr. Lewis who was then in Burnet County. The court told appellant to communicate with Mr. Lewis, and that the court would allow appellant time for his attorney to return from Burnet. Mr. Lewis advised the district attorney by telephone that he was not representing appellant, and had not been requested by appellant nor anyone acting for him to represent appellant in the trial. After receiving this information the court put appellant to trial. The record fails to show that appellant made any effort to secure any other attorney. The offense charged against appellant was not of that character which made it the duty of the court to appoint an attorney to represent appellant. We perceive no error on the court's part under the circumstances.

It was further averred in the motion for new trial that the jury was guilty of misconduct in arriving at their verdict. The motion is not verified. This has been held necessary where misconduct of the jury is alleged in the motion. Bryant v. State, 69 Texas Crim. Rep., 457, 153 S. W., 1156; Dodson v. State, 92 Texas Crim. Rep., 488, 244 S. W., 601; Faulkner v. State, 115 Texas Crim. Rep., 405, 28 S. W. (2d) 551. Appellant does attach to the motion attempting to support the averment of the jury's misconduct the affidavit of one of the jurors. This affidavit appears to have been taken by counsel who represented appellant in the hearing upon the motion. Such affidavit cannot be considered. See Siebe v. State, 92 Texas Crim. Rep., 605, 244 S. W., 1013, and authorities there cited. However, if the motion for new trial and the affidavit supporting it were not subject to the defects pointed out no basis for re-

versal would be shown predicated on claimed misconduct of the jury. The State controverted the motion for new trial upon the point named, and in support of the controversy attached an affidavit of the same juror whose affidavit is attached to appellant's motion. The court heard evidence upon the question and appellant failed to support his averment of misconduct.

It has been suggested that there is no affirmative showing that the court complied with that part of Art. 776, C. C. P., which reads as follows:

"* * * When the defendant has no counsel, the court shall inform the defendant of his right to make such application (for suspended sentence), and the court shall appoint counsel to prepare and present same if desired by defendant.* * *"

It is observed that nowhere does appellant complain in his motion for new trial that the court failed to observe such statute. There is no showing by appellant that he desired a suspended sentence, or that no legal impediment—a prior conviction for a felony—prevented the jury from recommending a suspended sentence. As was said in Holdman v. State, 94 Texas Crim. Rep., 433, 251 S. W., 218:

"In support of the judgment, however, the presumption obtains that the court did not ignore it—(the statute) and to overturn this presumption the contrary must affirmatively appear upon appeal."

The action of this court cannot properly turn upon the point that the record fails to show a compliance with the statute, but upon a failure of the record to affirmatively show that the statute was ignored. Until this appears the presumption is in favor of the regularity of procedure in accord with the statute. So far as the record here shows the trial court may have advised appellant of his right to apply for a suspended sentence, and appellant may not have wished to do so, or it may be that appellant had been formerly convicted of a felony in which event such legal impediment would have stood in the way of such application. The Holdman case (supra) is direct authority supporting the presumption that the trial court did not ignore the statute, and such presumption prevails until the contrary appears.

The State's motion for rehearing is granted, our former opinion reversing this case is withdrawn, having been based upon a misapprehension of the record, and the judgment of the trial court is now affirmed.

*Affirmed.*

MORROW, P. J., absent.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have again carefully considered appellant's contention that it was reversible error for the court below to fail to inform appellant of his right to a suspended sentence; and to fail to appoint counsel for him to prepare and present such application for him.

While our attention is called to authorities holding it mandatory, in a proper case, for the court to comply with these provisions of Art. 776, C. C. P., see McMurray v. State, 119 Texas Crim. Rep., 74; Alverson v. State, 106 Texas Crim. Rep., 513;—and authorities are cited holding it reversible error for the court to fail in such regard; see Barton v. State, 107 Texas Crim. Rep., 75; Noble v. State, 112 Texas Crim. Rep., 541; Haynes v. State, 108 Texas Crim. Rep., 62; Moses v. State, 94 Texas Crim. Rep., 353,—we are cited to no case at variance with the rule laid down in Holdman v. State, 251 S. W., 218, which applies to a situation such as is here before us certain general rules adhered to in the cases there cited which extend back at least to Johnson v. State, 14 Texas App., 310.

As specially applicable to the case at bar, it is said in the opinion in said Holdman case, supra, as follows:

"So, in this case, if it appeared by the motion for new trial or by bill of exceptions properly verified that the accused was within the age which under any circumstances would entitle him to have presented to the jury a plea for a suspended sentence, this court would not hesitate to reverse the judgment because upon such showing the judge of the trial court refused a new trial. In the absence of such information in the record, however, it must be presumed that no such fact existed."

In the instant case it is shown by the record that appellant had an able attorney to represent him in the preparation and presentation of his motion for new trial, and yet nowhere in said motion, or by any bill of exceptions, is there complaint of the refusal of the court to inform appellant of his right to a suspended sentence, or of any failure to appoint him an attorney to prepare and present such application for suspended sentence; nor is there in said motion any assertion or suggestion that appellant had never been convicted of a felony, or that he desired to present an application for suspended sentence. This being true, there seems no escape for this court from giving effect to what we said in the Holdman case, supra, and in cases citing and supporting the holding therein. See Davidson v. State, 255 S. W., 404; Wright v. State, 282 S. W., 1118. For aught we know from the record, the trial court fully informed

appellant of all his rights in such regard, and offered to appoint counsel for him. We are compelled to conclude,—following the decisions cited,—that our former opinion in this particular is correct.

Appellant also urges the insufficience of the testimony. Same is quite short, consisting chiefly of the testimony of appellant's wife. She swore that he had repeatedly threatened to kill her; that they had been separated for nearly a year at the time of this trouble, she having their seven children with her. On the occasion in question he came to her house with two watermelons which he put on the dining table and proceeded to cut with a butcher knife. She asked him not to cut them both as the children had already had melon that afternoon and it might make them sick. Appellant began cursing her, started toward her with said knife as if to throw it, but she told him to put it down and he did so, but came to her and began beating her with his fists. She got into another room and he followed her. One of their children tried to divert him, but he kicked the child in the chest and against the door facing. Mrs. Elder scrambled to the front door and swore appellant tried to pull her back, failing in which he kicked her two or three times in the side. They then evidently went into the yard, and here appellant got an angle iron, shown to be a piece of iron about three and one-half feet in length and weighing some two pounds, with which he knocked her down and started to stomp her, but their daughter pushed him, and his heels came down through the mother's hair. He then struck her with the angle iron five times; she fell to the ground from his blows; he beat her on the head and neck; three blows with the iron on the head, one on her shoulder, and one on her hip. She testified that at the time of the trial she was still suffering from the effects of the blows she received. She was unconscious part of the time during the difficulty. While she was on the ground appellant drew back the iron over his shoulder as if to hit her and her daughter grabbed it. Appellan then struck the girl with the iron, and hit her in the mouth with his fist. While he was beating his wife with the iron appellant said "I will kill you." The day before this he had told her she might as well wear a steel jacket, because he would kill her. Appellant's mother intervened, and appellant drew back, and his mother called "Get the law, he is going to kill us." A deputy sheriff swore to the iron piece, and that it had bloodstains on it. Appellant did not testify. He called a Mr. Yates who swore he heard the Elder children crying and ran

up there, and saw appellant strike his wife out in the yard with some kind of weapon. None of the above facts are denied or contradicted. We find ourselves unable to agree with appellant's contention that the evidence is insufficient.

The motion for rehearing is overruled.

*Overruled.*